**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAKE LAS VEGAS MASTER TRUST, ) <br> ) <br>            Plaintiff, ) <br>   vs. ) <br> ) <br> UNITED STATES INTERNAL REVENUE ) <br> SERVICE; Z'S, a defaulted Nevada ) <br> Corporation; and DOES 1 through 10, ) <br> inclusive, ) <br> ) <br>            Defendants. ) <br> ──────────────────────────) <br> LN MANAGEMENT LLC SERIES 31 RUE ) <br> MEDITERRA, ) <br> ) <br>            Plaintiff, ) <br>   vs. ) <br> ) <br> UNITED STATES INTERNAL REVENUE ) <br> SERVICE; Z'S, a defaulted Nevada ) <br> Corporation; and DOES 1 through 10, ) <br> inclusive, ) <br> ) <br>            Defendants. ) <br> ──────────────────────────) | Case No.: 2:14-cv-00435-GMN-NJK <br><br> (Consolidated with Case <br> No. 2:14-cv-00658-GMN-NJK) <br><br> **ORDER** |

      Pending before the Court is the Motion to Amend (ECF No. 46) filed by Defendant United States Internal Revenue Service ("United States"). Plaintiff Lake Las Vegas Master Trust ("Lake Las Vegas") and Plaintiff LN Management LLC Series 31 Mediterra ("LN Management") (collectively "Plaintiffs") filed an Opposition (ECF No. 49), and the United States filed a Reply (ECF No. 50).

      Also before the Court is the United States' Motion for Summary Judgment (ECF No. 31). Plaintiffs filed a Response (ECF No. 43), and the United States filed a Reply (ECF No.

47). For the reasons addressed below, United States' Motion to Amend and Motion for Summary Judgment are **GRANTED**.

I.     BACKGROUND

In this federal tax lien dispute, Plaintiffs seek quiet title and a declaratory judgment that certain federal tax liens have been extinguished or do not attach to their respective interests in four parcels of undeveloped real property. (*See* Compl., ECF No. 1-1). On December 16, 2004, Defendant Z's, a Nevada corporation, acquired title to the real property via four separate Grant, Bargain, Sale Deeds. (*See* Grant, Bargain, Sale Deeds, ECF Nos. 33-1, 33-2, 33-3, 33-4). Specifically, the four properties are: 27 Rue Mediterra Drive, Henderson, NV 89011, Assessor's Parcel Number ("APN") 160-23-213-004;[1] 29 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-003;[2] 31 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-002;[3] and 33 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-001[4] (collectively "Properties"). (*Id.*). Z's recorded the Grant, Bargain, Sale Deeds with the Clark County Recorder. (*Id.*).

On September 21, 2009, a delegate of the Secretary of Treasury prepared federal income tax assessments against "ZS Service Corp." for the years 2004 and 2005. (*See* 2004 Form 4340,

---

[1] Lot Four Nineteen (419) of Marseilles (also known as "Lake Las Vegas – Parcel 25") as shown by map thereof on file in Book 66 of Plats, Page 80, in the Office of the County Recorder of Clark County, Nevada.

[2] Lot Four Twenty (420) of Marseilles (also known as "Lake Las Vegas – Parcel 25") as shown by map thereof on file in Book 66 of Plats, Page 80, in the Office of the County Recorder of Clark County, Nevada.

[3] Lot Four Twenty-One (421) of Marseilles (also known as "Lake Las Vegas – Parcel 25") as shown by map thereof on file in Book 66 of Plats, Page 80, in the Office of the County Recorder of Clark County, Nevada.

[4] Lot Four Twenty-Two (422) of Marseilles (also known as "Lake Las Vegas – Parcel 25") as shown by map thereof on file in Book 66 of Plats, Page 80, in the Office of the County Recorder of Clark County, Nevada.

ECF No. 33-5; 2005 Form 4340, ECF No. 33-6). Z's was assessed $3,281,132.00 for the year 2004 and $1,858,392.00 for the year 2005. (*Id.*). Because the United States never received payment satisfying these assessments, a Notice of Federal Tax Lien ("NFTL") was recorded with the Clark County Recorder on January 5, 2010 against "ZS, a Corporation" in the amount of $2,409,309.06.[5] (NFTL, ECF No. 33-7).

After the NFTL was recorded, a homeowners' association, Lake Las Vegas Master Association ("Association"), filed Liens for Delinquent Assessments (ECF Nos. 33-9, 33-14, 33-16) against "ZS, A NEVADA CORPORATION," with the Clark County Recorder's Office for past due homeowner's fees related to the Properties on February 18, 2010 and December 14, 2010. Subsequently, the Association recorded Notices of Default and Election to Sell (ECF Nos. 33-10, 33-15) and a Notice of Foreclosure Sale (ECF No. 33-11) also naming "ZS, A NEVADA CORPORATION" as owner of the Properties.

The Properties were ultimately acquired from the Association on behalf of Plaintiffs by Ryan Welch, owner of Lake Las Vegas and manager of LN Management. (*See* Welch Dep. 10:25–11:16, Feb. 23, 2015, ECF No. 33-8; Welch Dep. 5:19–23, Apr. 22, 2015, ECF No. 33-13). On October 21, 2011, Welch purchased 27 Rue Mediterra Dr. on behalf of Lake Las Vegas at a non-judicial foreclosure sale. (*See* Foreclosure Deed, ECF No. 33-12). Following the sale, Welch received a Foreclosure Deed naming "ZS, A NEVADA CORPORATION" as the previous owner. (Welch Dep. 38:12–15, Feb. 23, 2015). On March 21, 2013, Welch purchased the remaining Properties—29 Rue Mediterra Dr., 31 Rue Mediterra Dr., and 33 Rue

---

[5] Lake Las Vegas argues that because of the discrepancy in the taxpayer name listed in the NFTL and income tax assessments, an issue of fact remains regarding whether the NFTL and assessments refer to the same entity. (Resp. 5:11–12). Each of these documents, however, reference an identical employer identification number. (*See* 2004 Form 4340; 2005 Form 4340; NFTL). Accordingly, the Court finds that the NFTL and assessments refer to the same entity.

Mediterra Dr. (collectively "LN Management Properties")—at a non-judicial foreclosure sale on behalf of LN Management. (*See* Foreclosure Deeds, ECF Nos. 33-17, 33-18, 33-19).

Prior to these purchases, Welch conducted a title search on the Clark County Recorder's Office website by first searching the Properties' APNs and then searching "the recorded deeded owner's entity [Z's]." (Welch Dep. 23:16–25, Feb. 23, 2015; *see also* Welch Dep. 23:5–6, Apr. 22, 2015). These searches revealed the Association's lien and Clark County property taxes, but not the NFTL. (Welch Dep. 23:10–13, Feb. 23, 2015). Following his purchase of the LN Management Properties, Welch also obtained title reports from Fidelity National Title with regard to the LN Management Properties. (*See* Welch Dep. 28:4, Apr. 22, 2015). Although the Preliminary Title Reports (ECF Nos. 33-21, 33-23, 33-25) failed to disclose the NFTL, subsequent Amended Title Reports (ECF Nos. 33-22, 33-24, 33-26) disclosed the NFTL against "Z's Corporation," the tax lien amount, and the taxpayer's employer identification number.[6]

Plaintiffs' separately filed Complaints seek to quiet title on the Properties and declaratory relief that Plaintiffs own the Properties free and clear the tax lien. (*See* Compl., ECF No. 1-1); Complaint, *LN Mgmt. LLC Series 31 Rue Mediterra v. United States*, No. 2:14-cv-00658-GMN-NJK (D. Nev. Apr. 30, 2014) (ECF No. 1-1). Lake Las Vegas filed its Complaint in state court on January 28, 2014, and LN Management filed its Amended Complaint in state court on February 20, 2014. *Id*. The United States timely removed both actions which were later consolidated in this Court. *See LN Mgmt. LLC Series 31 Rue Mediterra v. United States*, No. 2:14-cv-00658-GMN-NJK (D. Nev. Mar. 21, 2014) (order granting motion to consolidate, ECF No. 18). In its Answers, the United States asserts

---

[6] In his deposition, Welch stated that the Preliminary Title Reports were amended only because he alerted Fidelity National Title of the NFTL. (Ex. 2 to Resp., Welch Dep. 43:11–17, Feb. 23, 2015, ECF No. 43).

Counterclaims to foreclose the federal tax lien encumbering the Properties pursuant to 26 U.S.C. §§ 7401, 7403(a). (Answer 6:11, ECF No. 12); Answer, *LN Mgmt. LLC Series 31 Rue Mediterra v. United States*, No. 2:14-cv-00658-GMN-NJK (D. Nev. Apr. 30, 2014) (ECF No. 1-1). Plaintiffs did not file an answer to the United States' Counterclaims.

The United States now seeks leave of the Court to file an amended counterclaim which would correct Z's tax liability for the 2005 tax year from $648,621.79 to $3,409,601.79. (Mot. to Am. 2:19–21, ECF No. 46). According to the United States, the amount listed in its original counterclaims "was the result of a drafting error" that "mistakenly set for the amount of accrued interest . . . instead of the total outstanding amount of tax, penalty, and interest for the 2005 tax year." (Mot. to Am. 2:19–3:3). In addition, the United States seeks summary judgment on the priority of the parties' disputed interests in the Properties. (Memo in Supp. of MSJ 11:10–14, ECF No. 32). Finally, the United States requests a decree of foreclosure and order of judicial sale of the Properties in satisfaction of the tax liens. (*Id.* 20:8–12).

## II.    LEGAL STANDARD

### A.    Motion to Amend

Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16. *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Good cause "primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609).

If the moving party is able to satisfy the good cause standard under Rule 16, then the Court examines whether the amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608. Once the time period to amend as a matter of course in Rule 15(a)(1) of the Federal Rules of

Civil Procedure has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, Rule 15(a)(2) further instructs that courts "should freely give leave [to amend] when justice so requires." *Id*. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing

the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.   DISCUSSION

####    A.   Motion to Amend

The United States filed the Motion to Amend on October 13, 2015. (*See* Mot. to Am., ECF No. 46).  Pursuant to the Court's Scheduling Order, the last day to amend the pleadings was August 21, 2014. (Sched. Order, ECF No. 22).  The Motion to Amend is therefore untimely, and the United States must satisfy Rule 16's good cause standard as well as Rule 15(a)'s more liberal standard for the Court to grant leave to amend.

The Court finds that good cause exists for the United States' failure to amend within the specified time.  Indeed, the tax liability listed in the original Counterclaims was simply the result of a drafting error. (*See* Mot. to Am. 2:20).  Only after Plaintiffs pointed out the discrepancy in their Response to the Motion for Summary Judgment was the United States alerted to the mistake. (*Id.* 4:1–3).  Shortly thereafter, the United States filed the instant Motion to correct its error. (*Id.*).  Because it acted with diligence in requesting amendment, the United States satisfied Rule 16's "good cause" requirement. *See Johnson*, 975 F.2d at 608.

The United States has also met Rule 15(a)'s liberal amendment standard.  In their Opposition, Plaintiffs do not argue undue delay or bad faith on the part of the United States, nor do Plaintiffs argue that amendment would be futile.  Instead, Plaintiffs assert that amendment would be prejudicial on the basis that "Plaintiffs were prepared to go to trial on one amount" and now "discovery [is] closed and trial [is] looming." (Opp. 4:4–6, ECF No. 49).  However, the Court cannot see how the parties would have conducted discovery differently if the Counterclaims had originally set out the correct tax lien amount.  Moreover, several documents produced by the United States during discovery, including the lien itself, disclosed the true amount of the lien. (*See* NFTL, ECF No. 33-10; 2004 Acct. Transcript at 7, 8, ECF No. 48-1;

2004 Acct. Transcript at 6, 7, ECF No. 48-2). Although Plaintiffs complain that amendment would "saddle Plaintiffs with another $2,749,833 problem at this late date," as the Court finds below, the properly filed NFTL provided constructive notice of the lien amount even before Plaintiffs filed their Complaints. (Opp. 4:14–15). Plaintiffs have therefore failed to demonstrate that the Court should deny leave to amend due to prejudice. Accordingly, the Court grants the Motion to Amend the United States' Counterclaims.

### B. Motion for Summary Judgment

In its Motion for Summary Judgment, the United States asks the Court to: (1) declare that the tax lien attached to the Properties; (2) grant the tax lien priority over the Plaintiffs' interests in the Properties; and (3) order a judicial sale of the Properties to satisfy the tax lien. (*See* Memo in Supp. of MSJ, ECF No. 32).

### 1. *The Tax Lien Attached to the Properties*

If a taxpayer fails to pay federal taxes that have been properly assessed, "the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. "[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied." *Id.* § 6322. In *United States v. McDermott*, 507 U.S. 447 (1993), the Supreme Court explained that §§ 6321 and 6322 create "a lien in favor of the United States on all real and personal property belonging to the [taxpayer]." *McDermott*, 507 U.S. at 448.

Here, it is undisputed that on September 21, 2009, the United States made a timely and proper assessment against Z's for unpaid federal income taxes for the 2004 and 2005 tax years. (Resp. 2:24–3:1, ECF No. 43). This assessment created a lien upon Z's property pursuant to §§ 6321 and 6322. *See McDermott*, 507 U.S. at 448. It is undisputed that at the time the lien

was created, Z's property included 27 Rue Mediterra Dr., 29 Rue Mediterra Drive, 31 Rue Mediterra Dr., and 33 Rue Mediterra Dr. (*See* Resp. 2:20–23). Accordingly, the Court finds that the federal tax lien against Z's attached to the Properties.

        2.     *The Tax Lien is Entitled to Priority*

Having determined that the tax lien attached to the Properties, the Court next considers whether the lien has priority over Plaintiffs' interest in the Properties. A "federal tax lien is ordinarily dated, for purposes of 'first in time' priority against § 6323(a) competing interests [including purchasers], from the time of its filing, regardless of when it attaches to the subject property." *McDermott*, 507 U.S. at 454. However, § 6323 provides that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser . . . *until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary.*" 26 U.S.C. § 6323(a) (emphasis added). In other words, the United States must properly record its lien pursuant to § 6323(f) for it to be valid against other interest holders. *See TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1465 (9th Cir. 1993)

Section 6323(f) contains two main requirements for recording notices of federal tax liens against real property: (1) notice must be filed in the proper place; and (2) notice must be filed such that a "reasonable inspection" would reveal it. 26 U.S.C. § 6323(f)(1), (f)(4). Regarding the first requirement, § 6323(f) provides that notice must be filed "as designated by the laws of such State, in which the property subject to the lien is situated." *Id.* § 6323(f)(1). Plaintiffs do not argue that the Clark County Recorder was an improper place to record the NFTL. Indeed, the Nevada Revised Statutes designate the county recorder for the county in which the real property sits as the appropriate office in which to file a lien. *See* Nev. Rev. Stat. §§ 111.312(1), 247.120(1)(g). Under § 6323(f)'s second requirement, the applicable IRS regulations require notice of a tax lien to "identify the taxpayer, the tax liability giving rise to the lien, and the date

the assessment arose." 26 C.F.R. §§ 301.6323(f)–1(d)(1), (2).  In this case, the only issue in dispute is whether the United States properly identified the taxpayer.

While an IRS tax lien need not perfectly identify the taxpayer, a "reasonable inspection" must reveal the tax lien's existence. *See, e.g.*, *Kivel v. United States*, 878 F.2d 301, 304 (9th Cir. 1989).  The issue of what constitutes a "reasonable inspection" within the meaning of 26 U.S.C. § 6323(f)(4) is a mixed question of law and fact. *Id.* at 303–04.  Courts agree a "reasonable inspection" requires a diligent search based on the circumstances. *See Kivel*, 878 F.2d at 304–05 (analyzing facts relevant to search to determine whether the circumstances constituted a reasonable inspection); *Tony Thornton Auction Serv., Inc. v. United States*, 791 F.2d 635, 639 (8th Cir. 1986) (finding sufficient notice of federal tax liens under § 6323(f) where a "reasonable and diligent search would have revealed the existence of the notices of the federal tax liens"); *In re Green Pastures Christian Ministries, Inc.*, 437 B.R. 465, 476 (Bankr. N.D. Ga. 2010) (stating "a search must be made diligently").

Plaintiffs argue that a question of fact remains regarding whether Welch's search was reasonable. (Resp. 6:15).  On this point, Plaintiff's emphasize that "Welch searched the APN and grantor indexes of the legal owner of the property ["Z's"] looking for clouds on title, and did not locate the ZS lien." (*Id.* 6:13–14).  However, the language of § 6323(f)(4) and the vast majority of cases interpreting that section do not support a bright line rule that the only "reasonable inspection" is one that mechanically compares the full name of the taxpayer accurately spelled with the names listed in the index. *See Tony Thornton Auction Serv.*, 791 F.2d at 639 ("Davis's Restaurant" and "Daviss (sic) Restaurant" rather than "Davis Family Restaurant"); *United States v. Crestmark Bank (In re Spearing Tool & Mfg. Co.)*, 412 F.3d 653, 654–55 (6th Cir. 2005) ("Spearing Tool & Mfg. Co., Inc." rather than "Spearing Tool and Manufacturing Co., Inc."); *Villard v. United States*, 176 F.3d 479 (5th Cir. 1999) ("White–Hall Windermere Company, Inc." rather than "Whitehall–Windermere Company, Inc."); *Hudgins v.*

*IRS (In re Hudgins)*, 967 F.2d 973, 976 (4th Cir. 1992) ("Hudgins Masonry, Inc." rather than taxpayer's personal name, "Michael Steven Hudgins"). *But see In re Crystal Cascades Civil, LLC*, 398 B.R. 23, 31 (Bankr. D. Nev. 2008) *aff'd*, 415 B.R. 403 (B.A.P. 9th Cir. 2009) (finding lien against "Crystal Cascades, LLC, a corporation" failed to properly identify "Crystal Cascades Civil, LLC, a Nevada limited liability company" because the error was not "a minor misspelling").

Here, the Court joins the overwhelming majority of courts that hold a "reasonable inspection" entails searching for minor variations in the taxpayer's name.  Further, the Court finds that omission of a single apostrophe most closely resembles a minor error and not "omi[ssion of] a key part of the [taxpayer's] name." *In re Crystal Cascades Civil, LLC*, 398 B.R. at 36.  Accordingly, the Court agrees with the United States that "a proper search would include a search using the name of the prior owner of the properties and in this case would [require searching] ZS and Z's." (Memo in Supp. of MSJ, 18:14–15).  It is undisputed that a search of the Clark County Recorder for "ZS" reveals the existence of the tax lien.  Welch's failure to find the lien is therefore a failure to conduct a reasonable inspection, not a failure of the government to properly identify the taxpayer.

Because the requirements of § 6323 are met with respect to the NFTL, the tax lien is given priority from the date it was filed: January 5, 2010. (*See* NFTL, ECF No. 33-7).  Since this predates the Association's liens, the tax lien has priority over Plaintiffs' interests in the Properties.[7]

---

[7] Plaintiffs insist that because the United States failed to redeem the Properties under 26 U.S.C. § 7425(d), the federal tax lien has been extinguished pursuant to § 7425(b)(2). (Resp. 11:13–12:2). However, § 7425(d) applies only when the United States claims a junior interest in real property. *See* 26 U.S.C. § 7425(d)(1) ("In the case of a sale of real property . . . to satisfy a lien prior to that of the United States, the Secretary may redeem such property."). Similarly, § 7425(b)(2) provides that, even if the government's lien is inferior under state law, it will not be discharged by the foreclosure sale unless the proper type of notice is given to the United States. *See id.* § 7425(b)(2).  It is undisputed that the United States was not provided notice of the foreclosure sales.  And, given that the United States

### 3.    *Foreclosure of the Federal Tax Lien*

In order to enforce its tax liens, 26 U.S.C § 7403 empowers the United States to join all parties with an interest in the subject property and request a judicial sale of the property. *See United States v. Rodgers*, 461 U.S. 677, 461, 677, 691–92 (1983); *In re Pletz*, 221 F.3d 1114, 1118 (9th Cir. 2000). Section 7403(c) states in pertinent part that:

> [t]he court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C § 7403(c).

The United States has complied with § 7403 by filing its counterclaims for foreclosure naming all parties "having liens upon or claiming any interest in the property involved in such action" at the time of filing. The Court determined *supra* that the NFTL filed by the United States is valid and superior to the Plaintiffs' interests in the Properties. Accordingly, pursuant to § 7403, the Court orders the foreclosure and sale of the Properties to satisfy Z's outstanding debt to the United States. A separate Order of Foreclosure and Judicial Sale will follow this Order.

/ / /

/ / /

---

filed its lien on January 5, 2010 and the Association filed its liens on February 16, 2010 and December 14, 2010, the Association is the junior claimant, not the United States. *See United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 88 (1963) ("The priority of the federal tax lien provided by 26 U.S.C. s 6321 as against liens created under state law is governed by the common-law rule—'the first in time is the first in right.'") (quoting *United States v. New Britain*, 347 U.S. 81, 85–86 (1954)). Accordingly, § 7425 does not apply in the manner Plaintiffs urge, and the foreclosure sales did not extinguish the tax lien on the Properties.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that the United States' Motion to Amend (ECF No. 46) is **GRANTED**.

**IT IS FURTHER ORDERED** that United States' Motion for Summary Judgment (ECF No. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that the following Properties shall be sold in a foreclosure proceeding: 27 Rue Mediterra Drive, Henderson, NV 89011, APN 160-23-213-004; 29 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-003; 31 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-002; and 33 Rue Mediterra Dr., Henderson, NV 89011, APN 160-23-213-001.

**IT IS FURTHER ORDERED** that the United States shall submit a Proposed Order of Foreclosure and Judicial Sale within two weeks of the filing date of this Order.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __28__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge